St. Albans Hospital *v.* City of St. Albans.

November Term, 1934.

Present: Powers, C. J., Slack, Moulton, Thompson, and Sherburne, JJ.

Opinion filed January 2, 1935.

60

*J. W. Redmond* and *Horace H. Powers* for the plaintiff.

*Jay Chaffee,* City attorney of St. Albans, for the defendant.

Powers, C. J. This is an action of contract in which the plaintiff seeks to recover for the care, treatment, and support of certain persons under and by force of P. L. 3926, which, so far as it applies here, reads as follows: "If a transient person is suddenly taken sick or lame, or is otherwise disabled and con-

fined to any house in a town, * * * and is in need of relief, * * * the person at whose house he is, * * * shall be at the expense of relieving and supporting such person, until he represents his situation to the overseer of the poor of the town, * * * after which the overseer of the town so notified shall provide for his support; and, if the overseer neglects to provide for such support, the person so supporting him may recover therefor in an action of contract, on this statute, against the town so notified.''

The facts are agreed to. It appears from the statement thereof on file, that at different times persons residing outside of the defendant city came or were brought to the plaintiff's hospital while sick, lame, and disabled, and in need of medical or surgical attention. That they were received as patients, and such attention was given them by the plaintiff. That notices were mailed to the overseer of the poor of the city setting out these and other facts, and asking such overseer to provide for their support and relief, but he failed to do so. That thereafter the plaintiff provided such persons with necessary medical and surgical treatment, lodging, care, and maintenance to the fair value of $1,379.43, which the defendant has failed to pay on demand. On these facts the court below gave judgment for the defendant, and the plaintiff excepted.

At the argument, some time was taken in discussing the meaning of the word ''transient.'' It was quite unnecessary. As used in this statute, it means, merely, a person away from home. This has been our law for more than fifty years. It is the doctrine of *Town of Danville* v. *Sheffield,* 50 Vt. 243, 247. It is, almost literally, the definition given by Judge Barrett in *Goodell* v. *Mt. Holly,* 51 Vt. 423, 426, a case which was cited without criticism in *Wilbur* v. *Calais,* 90 Vt. 325, 341, 98 Atl. 913, and referred to for a definition of the word in *Catlin* v. *Town of Georgia,* 103 Vt. 97, 99, 152 Atl. 89. And finally, in *Town of Randolph* v. *Lyon,* 106 Vt. 495, 175 Atl. 1, 3, this definition was approved and applied and the law of the subject restated. It seems clear that by P. L. 3926, the Legislature, with a most worthy philanthropic purpose, intended to so provide that every person transient in the foregoing sense, whether rich or poor, whether a resident or nonresident of the town wherein he became sick, lame, or disabled, should be assured of care and treatment, promptly administered.

 The defendant argues that it does not appear that these persons were "confined" to the hospital, and insists that the omission to show expressly that they were in such a condition that they could not safely depart is fatal to the plaintiff's claim.

We fully agree with the defendant that only necessary inferences can be drawn from an agreed statement of facts, and that the intendments here are in favor of the defendant, the party prevailing below. We never read into findings a fact not there. *Hinsman* v. *Marble Savings Bank,* 102 Vt. 217, 223, 147 Atl. 270, and we always construe an agreed statement against the excepting party. *Grand Lodge, etc.* v. *Burlington,* 104 Vt. 515, 517, 162 Atl. 368. But we are bound to construe a record reasonably. *Hanley* v. *Poultney,* 100 Vt. 172, 174, 135 Atl. 713, 54 A. L. R. 371; *Poulin* v. *Graham,* 102 Vt. 307, 310, 147 Atl. 698; *Goodwin* v. *Gaston,* 103 Vt. 357, 371, 154 Atl. 772. This requirement applies to every part of this record, including the agreed statement. This shows that the persons relieved were "received into" the hospital, where the necessary medical and surgical attention was given them by the plaintiff; and that after notice was given to the overseer, the plaintiff provided them with "necessary lodging, care and maintenance."

Taking it by its "four corners," the agreed statement is sufficient to withstand the criticism of the defendant, and to make a case so far as this point is concerned.

 It is further urged that these persons were not confined to any "house" while being cared for by the plaintiff. This word is used in the statute in a much broader sense than the defendant would give it. By the "speech of people" the word "house" includes every form of structure designed for human habitation. The legal sense of the term is even more inclusive. *Caddy* v. *Interborough Rapid Transit Co.,* 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30, 35. See *County of Addison* v. *Blackmer,* 101 Vt. 384, 389, 143 Atl. 700, where we construed the word "building" to include a gas pump. To limit the term "house" as the defendant here would have us, would be to overlook and disregard the broad humanity of the statute, which would fail of its purpose if we did not hold that it includes all sorts of structures wherein people live. A hospital is such a structure.

■ As we have already suggested, it was unnecessary to show that these persons were "poor" within the meaning of the so-called pauper law. No question of financial ability arises under P. L. 3926, until suit is brought by one town against another. This we have repeatedly held, though it must be admitted that there persists an inclination to speak of this class of persons as "transient paupers." Such a characterization is unwarranted. *Town of Danville* v. *Sheffield, supra,* page 248 of 50 Vt.; *Goodell* v. *Mt. Holly, supra,* page 427 of 51 Vt.; *Catlin* v. *Town of Georgia, supra,* page 100 of 103 Vt., 152 Atl. 89; *Town of Randolph* v. *Lyon, supra.* See, also, *City of Montpelier* v. *East Montpelier,* 94 Vt. 62, 108 Atl. 704.

The unfortunate inclination above referred to, has resulted in some confusion and unwarranted expressions in our cases. In this connection, reference should be made to *New Haven* v. *Middlebury,* 63 Vt. 399, 402 *et seq.,* 21 Atl. 608, and *Town of Cabot* v. *Town of St. Johnsbury,* 94 Vt. 311, 318, 111 Atl. 454, wherein statements are made entirely out of harmony with the views hereinbefore expressed regarding the meaning of the term "transient person," as used in P. L. 3926. Whatever else might be said in criticism of these cases, this much is here demanded: Both were brought under what is now P. L. 3923. Neither of them required any reference whatever to P. L. 3926 or the law therein embodied. The interpretation of that law was wholly at variance with the accepted doctrine of our cases hereinbefore referred to, and is to be disregarded.

There is nothing absurd in the result to which the views herein expressed lead. When we keep in mind the obvious purpose of the statute as hereinbefore stated and the urgency usually involved in such cases, it is easy to see that some financial sponsor for the expenses bound to accrue ought to be provided, pending the discovery of the person or municipality ultimately liable therefor. This the Legislature has done. Nor, as was said of a jailor in *Smith* v. *Rutland,* 99 Vt. 183, 190, 130 Atl. 714, has that body left the defendant in so serious a plight as it would have it appear. The statute provides alternative sources of reimbursement. It may collect of the person relieved the amount of the bill paid together with the contingent charges, if such person is financially able to pay the same. But if he is not, it may recover the same from the town of his residence, if he has one in the State. It is only in the case of a nonresident of

the State that the city is to bear the burden. And cases in which the person relieved is financially irresponsible *and* without a residence in this State must be comparatively rare.

*Judgment reversed, and judgment for the plaintiff for* $1,379.43, with interest thereon from the date of the writ, and costs.

ST. ALBANS HOSPITAL *v.* CITY OF ST. ALBANS.

November Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed January 2, 1935.

*J. W. Redmond* and *Horace H. Powers* for the plaintiff.

*Jay Chaffee,* City attorney of St. Albans for the defendant.